# 11700–11886    COMMON TO ALL CASES

## 11700–11711    JURISDICTION

### 11700 Jurisdictional Standards

The Board's jurisdictional standards existing on August 1, 1959, provide the extent to which the Board might, in its discretion, decline to exercise its legal jurisdiction. Pursuant to Section 14(c)(1) of the Act, these standards may be modified, provided that the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing on August 1, 1959.

Although the Board has statutory authority to assert jurisdiction over all enterprises, not specifically exempted by Section 2(2) of the Act, whose operations affect interstate commerce, the Board has exercised its discretion to assert jurisdiction only over enterprises that meet monetary standards which are based on the character of the business. The standards which have the broadest application are those for retail and non-retail operations and are set forth in *Siemons Mailing Service,* 122 NLRB 81 (1959). Jurisdiction will be asserted over any retail operations with a gross volume of business in excess of $500,000 annually and which has some business, greater than de minimis, across State lines. The nonretail standard requires $50,000 of direct or indirect inflow or outflow of goods or services across State lines.

In addition, the Board has established separate individual standards to address certain industries and types of enterprises, including health care organizations, newspapers, and educational institutions. The Agency's publication "An Outline of Law and Procedure in Representation Cases," Chapter 1, Jurisdiction, contains a more complete discussion of the Board's jurisdictional standards and their application.

Even where an employer fails to meet the appropriate Board discretionary monetary standard, the Board will assert its jurisdiction to the extent necessary to address alleged violations of Section 8(a)(4) of the Act if it can be established that the Board has statutory jurisdiction, i.e., a greater than de minimis flow of goods or services across State lines. *Pickle Bill's, Inc.,* 224 NLRB 413 (1976).

### 11702 Investigation

Among the earliest determinations to be made is whether the employer is an "employer" under Section 2(2) of the Act and whether the employer meets the appropriate Board jurisdictional standard. If Board jurisdiction cannot be asserted, the Regional Office should dismiss the charge or petition, absent withdrawal.

### 11702.1 Obtaining Commerce Information from Employer

Normally, commerce information is furnished by the employer involved. Where appropriate, a Questionnaire on Commerce Information, NLRB Form-5081, is sent to the

employer with the initial letter serving the charge or petition. If the completed questionnaire is not conclusive, further investigation must be undertaken. As an alternative to the Commerce Questionnaire, the Regional Office may, where appropriate, accept a written stipulation of facts establishing Board jurisdiction.

### 11702.2  Examination of Employer Records

If an employer fails or refuses to stipulate to commerce facts, or to return a properly completed questionnaire on commerce, or if the Regional Office has reason to question the accuracy of a stipulation or questionnaire, an examination of the relevant records of the employer should be undertaken.

### 11702.3  Commerce Affidavit

The Regional Director may wish to procure an affidavit from an official of an employer certifying the completeness and accuracy of the employer's records examined by the Regional Office relative to the question of jurisdiction. The Regional Office should obtain such an affidavit where the investigation reveals that an employer's revenues fall just short of the Board's jurisdictional standards or where the Regional Director finds compelling circumstances. As with other witnesses in appropriate circumstances, the Board agent should inform the affiant of the criminal penalties under the United States Code applicable to any one giving false information to the U.S. Government. The affidavit could contain the following statement, which appears on petitions and charges:

> Willful false statements herein can be punished by fine and imprisonment. (U.S. Code, Title 18, Section 101)

If an employer refuses to provide such an affidavit in an R case and there exists a reasonable question as to the issue of the Board's jurisdiction, the matter should be set for hearing. However, in an unfair labor practice investigation, see Sec. 11704.2.

### 11702.4  Action on Basis of Commerce Investigation

All determinations on jurisdiction should be based on admissible evidence or stipulated facts, rather than bare admissions.

### 11704  Subpoenas for Commerce Information

### 11704.1  Representation Cases

In representation cases, if reasonable and practical efforts fail to develop sufficient evidence to dispose of the question of jurisdiction, production of the relevant material should be demanded by subpoena returnable either at the hearing or, in appropriate circumstances, before issuance of the notice of hearing.

Revised 6/07

The hearing officer should be prepared to establish facts concerning statutory jurisdiction and otherwise make a record appropriate for a jurisdictional determination under the rule set forth in *Tropicana Products,* 122 NLRB 121 (1958), in the event of noncooperation or noncompliance with the subpoena.

Under the Board's *Tropicana* rule, in a case where an employer refuses, on reasonable request by a Board agent, to provide information relevant to the Board's jurisdictional determination, jurisdiction will be asserted without regard to whether any specific monetary jurisdictional standard is shown to be satisfied, if the record at a hearing establishes that the Board has statutory jurisdiction.

### 11704.2  Unfair Labor Practice Cases

If the utilization of reasonable and practical means fails to develop sufficient evidence to dispose of the question of jurisdiction in an unfair labor practice case, a subpoena—normally a duces tecum—should be served on the employer. It should be returnable *before* issuance of complaint unless it is otherwise clear by way of prior cases, widespread repute, etc., that the Board has jurisdiction. In the latter case, the subpoena should be returnable at the C case hearing. The *Tropicana* rule described above may also be applied in similar circumstances in C case hearings. *Strand Theatre, K.I.M.V.B.A. Corp.,* 235 NLRB 1500 (1989).

### 11704.3  Failure to Comply with Subpoena

Where a person has failed to comply with a subpoena relating to commerce, it should be enforced (Secs. 11770 and 11790) unless the Board's *Tropicana* rule is relied on or the need for the subpoenaed material is otherwise obviated.

### 11705  Other Sources for Obtaining Commerce Information

Other sources may be used as a supplement to, a check on or substitutes for information supplied directly by the employer. For example:

- Prior cases
- Employees, such as receiving/shipping department employees
- Suppliers or customers of employer
- Transportation services
- State and Federal agencies
- Commercial and financial reporting services and trade journals

### 11705.1  Contacts with Other Agencies

Regional Offices may directly contact field offices of other agencies for commerce information. Contact with the headquarters of other agencies should be made through Operations.

### 11706  Jurisdictional Standards Not Met

Where it is clear that an employer does not meet the Board's discretionary monetary standards, the case should be dismissed, absent withdrawal.

### 11707  Jurisdictional Policy Question

Wherever a C case involves a policy question regarding jurisdiction, it may be submitted to Advice (Sec. 11750), whether or not any party objects to the assertion of jurisdiction.

### 11708  Proof in Formal Proceedings

In any formal proceeding, commerce facts sufficient to determine whether the Board has jurisdiction over the dispute must be established either through factual stipulation or by record evidence.

### 11709  Advisory Opinions

As set forth fully in Secs. 102.98 through 102.104, Rules and Regulations and Secs. 101.39 through 101.40, Statements of Procedure, under certain limited circumstances the Board will, at the request of a court or agency of a State or Territory, issue an advisory opinion as to whether it would assert jurisdiction over the parties to a particular controversy. (By Final Rule of January 10, 1997, Federal Register, Volume 61, Number 239, private parties may not petition for such advisory opinion.)

Whenever an agency or court of any State or Territory is in doubt whether the Board would assert jurisdiction over the parties in a proceeding pending before such agency or court, the agency or court may file a petition with the Board for an advisory opinion on whether the Board would decline to assert jurisdiction over the parties before the agency or the court (1) on the basis of its current monetary standards or (2) because the employing enterprise is not within the jurisdiction of the National Labor Relations Act. Unlike most other Agency matters that are initiated through the filing of documents with a Regional Office, petitions for advisory opinions must be filed directly with the Board. Although a copy of the petition should be served on the Regional Director, such does not satisfy the petitioner's obligation to serve the original on the Board.

**11709.1  Regional Office Action**

Upon the filing of a petition for an advisory opinion, a review of the petition and the Regional Office case files should be undertaken. If the Regional Director is in possession of facts bearing on the jurisdictional issues before the Board secured during the investigation of a prior or current C or R case and believes such facts would assist the Board in rendering its advisory opinion, the Regional Director should move to intervene in the advisory opinion proceeding. After conducting any additional investigation into jurisdiction, the Regional Director should submit to the Board the jurisdictional facts contained in the investigatory files with such motion. If the case is closed, however, no further investigation should be conducted unless the Board so requests.

In this regard, the Regional Director should:

- In accord with Sec. 102.113, Rules and Regulations, serve copies of the Regional Director's motion to intervene and a statement of jurisdictional facts on the State court or agency and the parties to the State proceedings

- Advise the parties so served that pursuant to Sec. 102.101, Rules and Regulations, they have 14 days after service thereof within which to make a response.

**11710  Declaratory Orders**

The procedures for the filing of a petition for a declaratory order on a question of Board jurisdiction by the General Counsel are set forth fully in Secs. 102.105 through 102.110, Rules and Regulations and Secs. 101.42 through 101.43, Statements of Procedure. Such a petition may be filed when both an unfair labor practice charge and a representation case relating to the same employer are contemporaneously on file in a Regional Office; there is doubt whether the Board would assert jurisdiction over the employer involved; and there is no dispute as to the facts concerning commerce. See, e.g., *Latin Business Assn.*, 322 NLRB 1026 (1997).

If the Regional Director determines that a declaratory order should be sought, a proposed petition containing the facts and pleadings required by Sec. 102.106, Rules and Regulations should be submitted to the Division of Operations-Management with a transmittal memorandum setting forth the Regional Office's recommendations. Eight copies of the petition, plus additional copies for service on all parties, and an affidavit of service, original and two copies, containing the names and addresses of all parties involved in the unfair labor practice and representation cases, should also be submitted.

If the petition is deemed appropriate, the General Counsel will sign it, file it with the Executive Secretary of the Board, serve a copy of the petition on each of the parties involved, complete the affidavit of service and notify the Regional Office by means of a conformed copy of the affidavit of service.

### 11711  National Mediation Board Jurisdiction

At times, questions may arise as to whether a particular employer involved in an NLRB proceeding is under the jurisdiction of the Railway Labor Act (RLA), administered by the National Mediation Board (NMB).  See 45 U.S.C. §§ 151 (railroads) and 181 (air carriers).  Section 2(2) of the National Labor Relations Act excludes from the definition of employer "any person subject to the Railway Labor Act."

### 11711.1  Jurisdiction Clear

If it is clear that the NLRB has jurisdiction over the employer, the Regional Office should proceed with the processing of the case.  See *United Parcel Service,* 318 NLRB 778 (1995), for circumstances in which referral to NMB is not appropriate.

Conversely, if it is clear that the employer falls under the jurisdiction of the RLA, the parties should be referred to the NMB and the charge or petition should be dismissed, absent withdrawal.

### 11711.2  Arguable RLA Jurisdiction

The Board's practice is to refer cases of arguable or doubtful RLA jurisdiction to the NMB for an advisory opinion on the jurisdictional issue.  *Federal Express Corp.,* 317 NLRB 1155 (1995).  Thus, in such circumstances, the Regional Office should submit the case for referral either to the Executive Secretary or the Division of Operations-Management as specified below.  In such cases, the written submission should contain the relevant facts as outlined in OM 90-83, concerning referrals to the NMB and should include the names, addresses, telephone numbers, fax numbers, and e-mail addresses of all parties to the proceedings and their representatives.

(a)  *C Case:*  In a C case, the Regional Office should initially contact the Division of Operations-Management to informally discuss the matter.  If a formal submission is required, the Regional Office should draft a letter to the Chief of Staff of the NMB for the signature of the Associate General Counsel, Division of Operations-Management.  The letter should be entitled "Request for Opinion on National Mediation Board Jurisdiction under the Railway Labor Act" and should be structured as follows:

- Background
- Facts
- Issues
- Contentions of the Parties

The letter should conclude with a statement that the question of jurisdiction is being submitted for NMB consideration.  The Regional Office should also submit its case file.

(b)  *R Case:*  Generally, in an R case, the Regional Office should conduct a hearing to develop a record on the jurisdictional issue.  If, after review of the record, the

Revised 6/07

RLA jurisdictional issue remains doubtful, the Region should prepare a memorandum directed to the Office of the Executive Secretary which should be structured as follows:

- Background
- Facts
- Issues
- Contentions of the parties

The memorandum should not contain a legal analysis by the Regional Office but should conclude with the recommendation that the Board consider whether the issue should be submitted to the NMB. If a hearing is held, the Regional Office should forward the transcript, exhibits and all briefs on the issue with the memorandum. If the Regional Office investigates the matter without a hearing, the Regional Office should submit all evidence and position statements relating to the jurisdictional issue. The Regional Office must also issue an Order Transferring the Case to the Board, NLRB Form-4481.

## 11712–11720    TRANSFER, CONSOLIDATION, AND SEVERANCE

### 11712  Generally

The transfer, consolidation and severance of cases are addressed at Sec. 102.33, Rules and Regulations as to charges and Sec. 102.72 as to petitions. Transfer, consolidation, and/or severance may be appropriate in order to effectuate the purposes of the Act and for cost and time considerations.

### 11714  Interregional Transfers

Generally, there are two categories of interregional case transfers.

### 11714.1  Individual Case(s) Transfer

Individual cases may be transferred from one Regional Office to another for the purposes set forth above at the time of filing or as soon thereafter as the necessity becomes apparent. In such circumstances, the Regional Offices involved in the transfer will confer about the proposed action and the reasons therefor. The sending Regional Office will then request that the Division of Operations-Management issue an order transferring the case. See Clerical Procedures, Sec. 12420. The request will contain the case name, petitioner or charging party, the present case number, and the case number to be assigned by the assisting Regional Office; a brief statement of the reasons for transfer; and an indication of whether the assisting Regional Office concurs in the proposed action.

A copy of the request will be sent to the assisting Regional Office. On receipt of the General Counsel's order of transfer, the sending Regional Office will send the file to the assisting Regional Office after notifying all parties to the case of the transfer and that future correspondence in the case should be directed to that office. The assisting Regional Office should notify the parties of the name of the agent to whom the case has been assigned.

### 11714.2 Interregional Assistance Program

Due to staffing considerations and/or backlogs of overage cases, cases may be transferred between Regional Offices pursuant to an interregional assistance program by which a set number of cases and/or specified counties will be transferred over a specified period of time. See OM 98-5 and OM 96-26. Under the interregional assistance program, the General Counsel may issue a blanket order setting forth the terms of the anticipated transfers.

(a) *ULP Cases:* Unfair labor practice cases susceptible to telephonic investigation are appropriate for transfer under this program. Both the sending Regional Office and the assisting Regional Office will assign case numbers to the transferred cases. Typically, the blanket transfer order will direct the assisting Regional Office to process the case through: dismissal; approval of withdrawal; issuance of a deferral letter; approval of and compliance with a settlement agreement; or a determination to issue complaint. Thereafter, the case will be returned to the sending Regional Office which will be responsible for any further processing required.

(b) *Representation Cases:* Representation cases may be assigned to an assisting Regional Office for the limited purpose of drafting and issuing a decision after a preelection hearing. The resulting decision will issue under the originating Regional Office's case number. Generally, the assisting Regional Office's Director will sign the decision as Acting Regional Director for the originating Regional Office and will include a footnote stating that the case was transferred pursuant to the interregional assistance program for decision writing only. In some situations, the originating Regional Office's Director will sign the decision and in that event such a footnote should not be included. In either circumstance, the originating Regional Office will document that the assisting Regional Office provided decision writing assistance, along with the dates the assistance was provided, by making an entry in Case Notes in the Case Activity Tracking System (CATS). Thus, the case will remain under a single case number throughout the entire process, eliminating unnecessary paperwork and confusion. See OM 03-77.

Assisting Regional Offices may also be requested to supply hearing officers to other Regional Offices for preelection or postelection hearings. In such circumstances, the case need not be transferred between Regional Offices.

(c) *Temporary Changes to Regional Office Boundaries:* Due to staffing considerations and/or backlog of overage cases, unfair labor practice cases, and representation petitions may also be transferred pursuant to temporary changes to Regional Office boundaries. Thus, the General Counsel may issue a blanket transfer order requiring that all cases arising in specified counties of one Regional Office be filed in another designated, usually contiguous, Regional Office.

Under these circumstances, both the sending Regional Office and assisting Regional Office will assign case numbers to the transferred cases. The assisting Regional Office will retain responsibility for the processing of the cases, including litigation, if necessary, until they are closed and will then forward the case files to the sending Regional Office.

For further instruction with respect to the latter two methods of transfer, consult OM 98-5 and OM 96-26.

## 11716  Consolidation

Pursuant to Secs. 102.33(c) and 102.72(c), Rules and Regulations, the Regional Director has the authority to consolidate unfair labor practice and representation cases, respectively, which are pending in the same Regional Office. A consolidation normally does not take place while the cases involved are in the investigative stages, but occurs upon the institution of formal proceedings or thereafter.

The following are examples of circumstances where cases may be consolidated:

- C cases where the respondent is the same in each case, where multiple respondents are sufficiently related or where the fact situations are sufficiently related

- R cases where the employer is the same in each case or multiple employers are sufficiently related

- A postelection R case with a C case, where the two cases involve sufficient issues in common

The authority for the consolidation of cases pending in more than one Regional Office rests with the General Counsel; the Division of Operations-Management should be consulted on such issues.

## 11718  Severance

Pursuant to Secs. 102.33(c) and 102.72(c), Rules and Regulations, the Regional Director has the authority to sever unfair labor practice charges and representation cases, respectively, which have been previously consolidated by the Regional Office. Where the General Counsel has authorized consolidation, clearance should be obtained from the Division of Operations-Management before severing cases.

### 11720  Motions to Consolidate or Sever

### 11720.1  Unfair Labor Practice Cases

Pursuant to Secs. 102.33(d) and 102.24, Rules and Regulations, motions by parties to consolidate or sever unfair labor practice cases after the issuance of complaint should be filed with the Chief Administrative Law Judge, if prior to hearing, or with the ALJ, if during hearing.

### 11720.2  Representation Cases

Motions by the parties to consolidate or sever representation cases should be filed in accordance with Sec. 102.65, Rules and Regulations.

## 11730–11734  CONCURRENT R (REPRESENTATION) AND C (ULP) CASES

To the extent relevant, the principles of these Sections should also be applied to situations involving UD petitions.

These sections apply to preelection situations. They generally do not deal with those postelection situations in which challenges and/or objections and related unfair labor practice charges are being processed. Such situations are discussed in Secs. 11407 and 11420.1.

For special procedures where there are concurrent 8(b)(7) cases, see Secs. 10240–10248.

## 11730–11731  BLOCKING UNFAIR LABOR PRACTICE CHARGES; EXCEPTIONS

### 11730  Blocking Charge Policy—Generally

The Agency has a general policy of holding in abeyance the processing of a petition where a concurrent unfair labor practice charge is filed by a party to the petition and the charge alleges conduct that, if proven, would interfere with employee free choice in an election, were one to be conducted. However, there are significant exceptions to the general policy of having a charge "block" a petition. Accordingly, the filing of a charge does not automatically cause a petition to be held in abeyance.

The exceptions to the blocking charge policy are set forth in detail in Sec. 11731. Where the Regional Director is giving consideration to these exceptions while implementing the blocking charge policy, it should be recognized that the policy is not intended to be misused by a party as a tactic to delay the resolution of a question concerning representation raised by a petition. Rather, the blocking charge policy is

premised solely on the Agency's intention to protect the free choice of employees in the election process.

### 11730.1 Types of Blocking Charges

Blocking charges fall into two broad categories. The first, called Type I charges, encompasses charges which allege conduct that only interferes with employee free choice. The second, called Type II charges, encompasses charges which allege conduct that not only interferes with employee free choice but also is inherently inconsistent with the petition itself. After investigation of the latter charges and a determination as to their merit, such charges may also cause a petition to be dismissed.

### 11730.2 Type I Charges: Charges That Allege Conduct That Only Interferes With Employee Free Choice (Request to Proceed May be Honored)

When the charging party in a pending unfair labor practice case is also a party to a petition, and the charge alleges conduct that, if proven, would interfere with employee free choice in an election, were one to be conducted, and no exception (Sec. 11731) is applicable, the charge should be investigated and either dismissed or remedied before the petition is processed. Unless Type II conduct is involved, a request to proceed by the charging party (Sec. 11731.1) may be honored in these cases. *Columbia Pictures Corp.,* 81 NLRB 1313, 1314 (1949); *Carson Pirie Scott & Co.,* 69 NLRB 935, 938–939 (1946); *United States Coal & Coke Co.,* 3 NLRB 398, 399 (1937); see also *Holt Bros.,* 146 NLRB 383, 384 (1964).

### 11730.3 Type II Charges: Charges that Affect the Petition or Showing of Interest, that Condition or Preclude a Question Concerning Representation, or that Taint an Incumbent Union's Subsequent Loss of Majority Support (Request to Proceed May Not be Honored)

Some unfair labor practice charges allege conduct which, if proven, would not only have a tendency to interfere with the free choice of employees in an election, but also would be inherently inconsistent with the petition itself. Regardless of whether such charges are filed by a party to the petition or by a nonparty, and regardless of whether a request to proceed (Sec. 11731.1) is filed, such charges block a related petition during the investigation of the charges, because a determination of the merit of the charges may also result in dismissal of the petition. Inherently inconsistent charges include, but are not limited to, the situations described below in Secs. 11730.3(a) through (c).

### 11730.3(a) Charges that Affect the Petition or Showing of Interest

These are Section 8(a)(1) and (2) or 8(b)(1)(A) charges that challenge the circumstances surrounding the petition or the showing of interest submitted in support of the petition. If meritorious, such a charge may invalidate the petition or some or all of the showing of interest. As a consequence, the petition may be dismissed. Sec. 11733.2(a)(1).

Examples:

- A finding of merit to an 8(a)(1) charge that alleges the employer's representatives were directly or indirectly involved in the initiation of a RD or UD petition.

- A finding of merit to an 8(a)(1) charge that alleges the employer's representatives were directly or indirectly involved in the support of a RD or UD petition, if the showing is reduced below 30 percent after the tainted showing is subtracted.

- A finding of merit to an 8(a)(2) charge that alleges employer representatives assisted in the showing of interest obtained by a labor organization, if the showing is reduced below 30 percent after the tainted showing is subtracted.

- A finding of merit to an 8(b)(1)(A) charge that alleges a labor organization's showing of interest was obtained through threats or force, if the showing is reduced below 30 percent after the coerced showing is subtracted.

**NOTE**: See Sec. 11028.2 for the limited circumstances under which a petition may be dismissed because of conduct relating to the petition or the showing of interest, where such conduct is not the subject of an unfair labor practice charge.

### 11730.3(b) Charges that Condition or Preclude a Question Concerning Representation

These are Section 8(a)(2) and (5), 8(b)(3), or other charges which allege violations that involve recognition issues. These charges include allegations of 8(a)(5) or 8(b)(3) failure to recognize or bargain, or 8(a)(1) and/or (3) violations requiring a remedial bargaining order, or 8(a)(2) unlawful recognition. A determination of merit in such a charge may impose conditions upon or preclude the existence of the question concerning representation sought to be raised by the petition (e.g., *Big Three Industries*, 201 NLRB 197 (1973)). Sec. 11733.2(a)(2).

Examples:

- An 8(a)(5) or 8(b)(3) charge, which seeks to establish, to continue or to reestablish a bargaining relationship and for which the remedy is an affirmative bargaining order, may require dismissal of a related petition upon a finding of merit to the charge.

- An 8(a)(1) and/or (3) charge, in which a remedial bargaining order is being sought, seeks to establish a bargaining relationship, and would require dismissal of a related petition upon a finding of merit to the charge. *NLRB v. Gissel Packing Co.*, 395 U.S. 575 (1969).

- An 8(a)(2) charge that seeks to disestablish a bargaining relationship imposes a condition upon the question concerning representation that the

petition seeks to raise and must be resolved prior to processing the petition. In this situation, a determination of no merit, permitting the challenged bargaining relationship to continue, may, because of contract or recognition bar principles, require dismissal of a related petition which seeks to establish a new bargaining relationship. A determination of merit to the 8(a)(2) charge may cause the petition to continue to be blocked, until resolution of the charge by the Board, since the bargaining relationship must be disestablished before the petition can be processed. EXCEPTION: Sec. 11731.1(c)(1).

NOTE: Not all merit determinations in charges alleging 8(a)(2) and (5) or 8(b)(3) violations would require dismissal of the petition. If the remedy for the 8(a)(2) and (5) or 8(b)(3) conduct would not have an effect on the bargaining relationship and thus does not condition or preclude the existence of the question concerning representation sought to be raised by the petition, and if other Type II charges are not involved (Secs. 11730.3(a) and (c)), the petition would not be subject to dismissal.

Examples:

- Remedying a meritorious 8(a)(2) allegation of limited assistance by a low-level supervisor does not necessarily require disestablishment of a bargaining relationship.

- Remedying meritorious allegations of 8(a)(5) or 8(b)(3) unilateral change or failure to furnish information does not necessarily require an affirmative bargaining order.

Accordingly, these kinds of charges should be viewed as type I charges that allege only interference (Sec. 11730.1(a)), notwithstanding their allegations of 8(a)(2) and (5) or 8(b)(3) conduct.

FURTHER NOTE: An 8(a)(2) and (5) or 8(b)(3) charge involving recognition conduct that postdates the filing of the petition does not warrant dismissal of the petition, since the petition was already on file when the later allegedly unlawful conduct occurred. Similarly, such conduct that postdates the obtaining of the showing of interest and did not affect the filing of the petition does not warrant dismissal of the petition. Hence, these kinds of charges should be viewed as Type I charges that allege only interference (Sec. 11730.1(a)). *Empresas Inabon, Inc.,* 309 NLRB 291 (1992) (also *Union de la Construccion v. NLRB,* 10 F.3d 14, 16 (1st Cir. 1993)); *Celebrity, Inc.,* 284 NLRB 688 (1987).

**11730.3(c)  Charges that Taint an Incumbent Union's Subsequent Loss of Majority Support**

These charges can be of any kind, other than a charge that affects the circumstances surrounding the petition or the showing of interest or a charge that

involves a general refusal to recognize and bargain with the union. These charges raise the issue of a causal relationship between the violations alleged and the subsequent expression of employee disaffection with an incumbent union. A finding of merit to such a charge and of a causal connection between the violations alleged and the employee disaffection would warrant dismissal of a petition that was filed based upon that disaffection. Sec. 11733.2(a)(3).

Example:

An 8(a)(1) statement to a group of represented employees that the employer intends to operate in the future as a nonunion employer may require the dismissal of a petition that follows, if upon a finding of merit to the charge a causal relationship is established between the statement and the subsequent expression of employee disaffection with the incumbent union which is used to support the petition. *Williams Enterprises,* 312 NLRB 937, 939 (1993).

In *Saint Gobain Abrasives, Inc.*, 342 NLRB 434 (2004), the Board concluded that a hearing should be held to resolve genuine factual issues as to whether there was a causal nexus between alleged unfair labor practices and the filing of a decertification petition before the dismissal of such a petition.

Accordingly, in such circumstances the Regional Office should conduct a preliminary administrative investigation and proceed as follows:

(a) If no evidence of causal nexus exists, e.g., the showing of interest was obtained prior to the alleged unlawful conduct or the disputed conduct was de minimus or isolated:

- No further consideration should be given to dismissal of the petition
- The decision to treat the charge as blocking the processing of the petition should be reconsidered

(b) If evidence may support a finding of a causal nexus:
- Contact the Division of Operations-Management as to the appropriate action including a possible hearing on the causal nexus issue
- Advise the Office of Representation Appeals of the issue
- Continue to treat the charge as blocking the processing of the petition

### 11730.4 Decision Whether to Hold Petition in Abeyance

Regardless of whether the charge is already pending at the time of the filing of the petition or is filed after investigation of the petition has already begun, the Regional Director should decide whether the general policy of holding the petition in abeyance should be applied (Sec. 11730) or if one of the exceptions in Sec. 11731 applies. In implementing the blocking charge policy, the Regional Director should assess,

Revised 6/07

throughout the steps of processing the charge and the petition, whether the charge blocks the petition.

If at any time during or after investigation the Regional Director establishes that there was no causal relationship between the unfair labor practice allegations and the decertification petition, the Regional Director should not give further consideration to dismissing the petition and should reconsider whether the charge should continue "blocking" the processing of the petition.

### 11730.5 AC and UC Cases

Although the blocking charge policy applies to AC and UC petitions, in most situations the charge and the petition raise significant common issues which may better be resolved by processing the UC or AC petition. Secs. 11490.3 and 11731.3.

### 11730.6 Period of Pendency of Charge

A charge is pending at all stages up to and including an administrative decision to dismiss or a withdrawal, on the one hand; or, on the other, up to and including a court judgment with which there has not been full compliance. However, also see Sec. 11732 regarding the impact of charges that are to be or have been dismissed.

### 11730.7 Informing Parties

The Board agent handling the matter should inform the parties of any determinations made with regard to concurrent charges and petitions and the reasons therefor. If any party requests the reasons in writing, the Regional Director should promptly provide them. If the determination is to hold the petition in abeyance, the letter should also inform the parties of their right to obtain review by the Board of this determination under Sec. 102.71 of the Rules and Regulations.

If as a result of the determination a scheduled election is postponed, see Secs. 11302.1(b) and 11314.8 regarding notification to the parties.

### 11730.8 Notification to Board

If a blocking charge is filed at a time when a petition is pending before the Board in Washington, the Executive Secretary should be notified of the filing, as well as of any request to proceed that may be received. All subsequent relevant developments or dispositions of the unfair labor practice charge should also be reported to the Executive Secretary.

### 11731 Exceptions to Blocking Charge Policy

Exceptions to the Agency's general policy to block petitions are described below in Secs. 11731.1 through .5 as Exceptions 1 through 5. As noted in Sec. 11730.4, their applicability may be invoked or reconsidered at any time during the pendency of the petition.

Revised 6/07

**NOTE:** Exceptions 2 through 5 apply to Type II as well as Type I charges. The fact that a Type II charge may ultimately involve dismissal of the petition should be an element in the Regional Director's consideration as to whether an exception applies.

## 11731.1 Exception 1: Request to Proceed

### 11731.1(a)  Receipt of Request to Proceed (Type I Charge)

A petition may be processed notwithstanding the pendency of a Type I charge (Sec. 11730.2) in a related C case, subject to the limitations set forth below, if the party filing the charge requests that the petition proceed. Form NLRB-4551 may be used for this purpose. On receipt of a request to proceed and if otherwise appropriate, the Regional Director may proceed with action on the petition. If the matter is before the Board for any reason, the Executive Secretary should be so advised.

### 11731.1(b)  Rescission of Request to Proceed

Should a party seek to rescind a request to proceed and once again suspend action on the petition, the reasons for the change should be ascertained. The Regional Director should rule on the request to rescind, applying the same considerations outlined in Sec. 11730 regarding the Agency's blocking charge policy. The charging party's prior willingness to attempt to continue with processing the petition should not, in and of itself, be viewed as a reason not to honor the charging party's subsequent attempt to rescind its request to proceed. It may contend, for example, that with the passage of time the unfair labor practices have had a tendency to interfere with the free choice of employees in an election. On the other hand, if the Regional Director determines, upon consideration of all the relevant factors, not to grant approval of the rescission, processing of the petition should continue.

The parties should be appropriately informed. Sec. 11730.7.

### 11731.1(c)  Where Type II Charges are Involved

A request to proceed should not be approved in the face of a Type II charge. Sec. 11730.3. Where such allegations are involved, they should be disposed of before a concurrent petition is processed, unless other exceptions apply (Secs. 11731.2 through .5).

### 11731.1(c)(1)  Section 8(a)(2) *Carlson* Waiver

In cases in which the Board has entered an order requiring the respondent employer to withdraw and withhold recognition from the assisted union unless and until it has been certified, the Regional Director may honor a waiver whereby the petitioner affirmatively indicates a willingness to withdraw an 8(a)(2) assistance charge in the event the allegedly assisted union is certified. *Carlson Furniture Industries,* 157 NLRB 851 (1966). In the event all parties reach an agreement that accomplishes the same purpose as a Board order disestablishing a bargaining relationship, thus removing recognition or contract bar as an issue from the processing of the petition, the Regional Director may honor a waiver from the petitioner modeled on *Carlson Furniture*.

**11731.1(c)(2)  Withdrawal and Attempted Reinstatement of Charge**

A party which requests withdrawal of a refusal-to-bargain charge or of a domination of or assistance to union charge, in order to unblock a R case (in other words, which attempts to accomplish by withdrawal what it cannot accomplish by a request to proceed), should be advised that reinstatement of the charge might not be permitted after an election. *Fernandes Supermarkets,* 203 NLRB 568 (1973).

**11731.2  Exception 2: Free Choice Possible Notwithstanding Charge**

There may be situations where, in the absence of a request to proceed (Secs. 11731.1(a) and .1(c)(1)), the Regional Director is of the opinion that the employees could, under the circumstances, exercise their free choice in an election and that the R case should proceed notwithstanding the existence of a concurrent Type I or Type II unfair labor practice case and the absence of a request to proceed or a waiver.

**Factors:** The following are among the factors to be considered under this section.

(a)  The character, scope, and timing of the conduct alleged in the charge, and the conduct's tendency to impair the employees' free choice

(b)  The size of the work force relative to the number of employees involved in the events or affected by the conduct alleged in the charge

(c)  Whether the employees were bystanders to or the actual targets of the conduct alleged in the charge

(d)  The entitlement and interest of the employees in an expeditious expression of their preference regarding representation

(e)  The relationship of the charging parties to labor organizations involved in the representation case

(f)  The showing of interest, if any, presented in the R case by the charging party

(g)  The timing of the charge.

Also see Sec. 11731.5 for the considerations that apply when a charge is filed before a scheduled election.

**11731.3  Exception 3: Petition and Charge Raise Significant Common Issues; UC and AC Petitions**

There are situations where the Type I or Type II alleged unfair labor practices are so related, at least in part, to the unresolved question concerning representation sought to be raised by the petition that the processing of the petition will resolve significant common issues. *Panda Terminals,* 161 NLRB 1215, 1223–1224 (1966); *Krist Gradis,* 121 NLRB 601, 615–616 (1958).  Thus, it may be appropriate to conduct a hearing and issue a decision to resolve an issue, such as supervisory status, that is relevant to both the petition and the unfair labor practice case.  Sec. 11228.  Where appropriate, the conditions of Exception 2 (Sec. 11731.2) should also be taken into account, especially with respect to proceeding to an election.

**UC and AC Petitions:** When a UC or AC petition and an 8(a)(2) or (5) charge raise the same issue, the UC or AC petition may be the more effective way of resolving the issue. Sec. 11490.3. Ordinarily, the UC or AC case should be processed while the 8(a)(2) or (5) charge is held in abeyance, unless the potential for excessively lengthy or duplicative proceedings warrants a determination to process the issue through the unfair labor practice case.

## 11731.4 Exception 4: Scheduled Hearing

In situations where a R case hearing has already been scheduled when a Type I or Type II unfair labor practice charge is filed and time does not permit determination of possible merit of the charge, the Regional Director may proceed with the hearing in the R case. A separate determination should then be made by the Regional Director pursuant to Exceptions 2 and 3 above (Secs. 11731.2 and .3) with regard to issuing a decision and/or conducting an election.

## 11731.5 Exception 5: Scheduled Election

When an election has already been scheduled and thereafter a Type I or Type II unfair labor practice charge is filed too late to permit adequate investigation before the scheduled election, the Regional Director may, in his/her discretion:

(a) Postpone the election pending disposition of the charge; or

(b) Hold the election as scheduled and impound the ballots until after disposition of the charge; or

(c) Conduct the election, issue the tally of ballots and, in the absence of objections, issue a certification; and then proceed to investigate the charge.

**Factors:** The following are among the factors to be considered under this exception:

(1) The extent to which substantial evidence in support of the allegations is submitted by the charging party with its charge

(2) The passage of time between the alleged conduct and the filing date of the charge

(3) The seriousness of the allegations and the evidence submitted with the charge as to its dissemination.

Relevant factors recited in Exception 2 (Sec. 11730.2) may also be considered.

If as a result of the determination a scheduled election is postponed, see Secs. 11302.1(b) and 11314.8 regarding notification to the parties.

Revised 6/07

## 11732–11733  FINDING AS TO MERIT OF UNFAIR LABOR PRACTICE CHARGE

### 11732  Charge Found Not to Have Merit

If, upon completion of investigation of the charge, it is determined that the charge lacks merit and is to be dismissed, absent withdrawal, the Regional Director should proceed with the processing of the petition.

Where the situation involves a Type I charge (Sec. 11730.2), the Regional Director should proceed with the petition as if there were no concurrent charge, even though the dismissal of the charge is either pending or on appeal, unless, in his/her discretion, he/she concludes that further processing of the petition should await the results of the appeal.

Where the situation involves a Type II charge (Sec. 11730.3) and the dismissed charge is either pending or on appeal, the Regional Director may await the results of an appeal before processing or dismissing the petition, as appropriate, or he/she may proceed immediately.

If an appeal of the dismissal of the charge is filed with the Office of Appeals, that office should be immediately notified of the pending concurrent petition and its current status. If subsequent to this notification an election is scheduled in the petition, separate notification of such should be sent to the Office of Appeals. If an election is to be conducted before the Office of Appeals has ruled on the appeal of a Type II charge, the ballots ordinarily should be impounded pending a ruling from the Office of Appeals.

### 11733  Charge Found to Have Merit

If, upon completion of investigation of the charge, it is determined that the charge has merit and that a complaint should issue, absent settlement, the Regional Director should determine whether further processing of the petition should be blocked by the charge or the petition should be dismissed. The parties should be informed accordingly. Sec. 11730.7. For the purposes of that determination, the Regional Director shall accept the allegations to be set forth in the complaint as true.

### 11733.1  Blocking of Petition Warranted

If the Regional Director determines that the petition should be blocked by a Type I charge, because the impact of the meritorious unfair labor practices would have a tendency to interfere with employee free choice in an election, were one to be conducted, he/she should hold the petition in abeyance until disposition of the charge, whereupon the processing of the petition may be resumed. Absent unusual circumstances, Exceptions 1 through 5 to the foregoing, set forth in Secs. 11731.1 through .5, are equally applicable after a merit determination has been made in the charge.

**11733.2 Dismissal of Petition Warranted**

**11733.2(a)  Types of Violations Found**

**11733.2(a)(1)  Violations that Affect the Petition or Showing of Interest**

If the Regional Director finds merit to an 8(a)(1) and (2) or 8(b)(1)(A) charge that challenges the circumstances surrounding a petition or the showing of interest submitted in support of a petition (Sec. 11730.3(a)) and the alleged conduct, if proven, directly affects a petition or its showing of interest to an extent that the showing is insufficient, then the petition should be dismissed, subject to reinstatement by the petitioner after final disposition of the C case.  Sec. 11733.2(b).

**NOTE:** Sec. 11028.2 discusses the limited circumstances under which a petition may be dismissed because of conduct relating to the petition or the showing of interest, where such conduct is not the subject of an unfair labor practice charge.

**11733.2(a)(2)  Violations That Condition or Preclude a Question Concerning Representation**

If the Regional Director determines that the meritorious allegations involve violations of Section 8(a)(1), (3), and (5) or 8(b)(3) and the nature of the alleged violations, if proven, would condition or preclude the existence of a question concerning representation, the Regional Director should dismiss the related R case, subject to a request for reinstatement by the petitioner after final disposition of the charge.  Sec. 11733.2(b).  If meritorious unfair labor practice allegations result in a settlement agreement, including one which contains a nonadmissions clause or one which involves a non-Board settlement resulting in a withdrawal of the charge, pursuant to which settlement agreement the employer is to recognize and bargain with the union, then any RD or other petition that challenges a union's majority status that was filed subsequent to the onset of the alleged unlawful conduct should be dismissed, without provision for reinstatement. *Liberty Fabrics, Inc.,* 327 NLRB 38 (1998); *BOC Group, Inc.,* 323 NLRB 1100 (1997); *Douglas-Randall, Inc.,* 320 NLRB 431 (1995); *Freedom WNLE-TV,* 295 NLRB 634 (1989).  A petition filed while a settlement agreement is still in the compliance stage of case processing is also subject to dismissal.  Sec. 11730.6.

**11733.2(a)(3)  Violations That May Affect an Incumbent Union's Subsequent Loss of Majority Support**

This section applies to an unfair labor practice charge of any kind other than one that directly attacks the circumstances surrounding the petition or the showing of interest or one that involves a general refusal to recognize and bargain with the union.  If the Regional Director finds merit to an unfair labor practice charge of another kind than described in the preceding sentence, and there is specific proof of a causal relationship between the unfair labor practice allegations and ensuing events indicating that the alleged unfair labor practices motivated a subsequent expression of employee disaffection with an incumbent union, then the Regional Director should dismiss a petition that was filed based upon that disaffection.  Prior to making such a decision, the Regional Office may be required to conduct a hearing on the causal nexus between the allegedly unlawful

conduct and the filing of the petition. See Sec. 11730.3(c). The petition is subject to a request for reinstatement by the petitioner after final disposition of the C case. Sec. 11733.2(b). *Williams Enterprises,* 312 NLRB 937, 939 (1993).

### 11733.2(b) Dismissal of Petition

The dismissal letter (Sec. 11102) or order dismissing the petition should set forth the basis for the action, including the reasons that the unfair labor practice findings would affect further processing of the petition. The specific connection between the conduct alleged as unfair labor practices and the petition should be clearly articulated. If more than one basis for dismissal is arguably present, all such bases ordinarily should be stated. For example, conduct, such as direct dealing, which the investigation revealed was causally related to the employee disaffection upon which the petition was based (Sec. 11730.3(c)), may also be conduct the remedy for which—bargaining—precludes a question concerning representation (Sec. 11730.3(b)); the petition should be dismissed for both reasons. The parties should be informed of the right to obtain review by filing a request for such with the Board. Sec. 102.71, Rules and Regulations. Where there is provision for reinstatement of the dismissed petition on application of the petitioner after final disposition of the unfair labor practice case, the dismissal letter or order dismissing the petition should so advise the petitioner. A petition is subject to reinstatement only if the allegations in the unfair labor practice case, which caused the petition to be dismissed, are ultimately found to be without merit. An application for reinstatement under any other circumstances should be denied.

In order to assure notification to the petitioner of the disposition of the unfair labor practice proceeding, the petitioner should be made a party in interest in the unfair labor practice proceeding, with an interest limited solely to receipt of a copy of the order or other document that operates to finally dispose of the proceeding and the dismissal letter or order dismissing the petition should so advise.

## 11734    RESUMPTION OF PROCESSING OF PETITION

**11734  Resumption of Processing of Petition Upon Disposition of Charge**

Processing of a petition held in abeyance during the pendency of an unfair labor practice charge may be resumed upon the disposition of the charge. Where the charged party or respondent in the unfair labor practice proceeding has taken all action required by a settlement agreement, administrative law judge's decision, Board Order, or court judgment, except that the full period for posting any required notice has not passed, certain preelection action with respect to the R case may be taken, whether or not the charging party requests that the R case proceed. Thus:

(a)  A hearing may be held

(b)  An election agreement may be approved

(c)  An order dismissing petition or a decision and direction of election may be issued.

As noted, these preelection actions may be taken in the absence of a request to proceed.

**ELECTION:** In the event the charging party wishes to proceed to an election during the posting period, a written waiver must be obtained from the charging party, stating that the unremedied unfair labor practices referred to in the posted notice may not constitute grounds on which the Board may set aside the election.

Absent such a waiver, an election should not be held until the posting period has expired.

**EXCEPTION:** When the remedy requires that recognition of an unlawfully assisted union be withdrawn and withheld unless and until that union has been certified by the Board, neither a RC petition filed by that union nor a RM petition should be entertained until after the expiration of the posting period. The showing of interest submitted in support of a petition filed by that union must be dated after expiration of the posting period.

## 11740    PRIORITY OF CASE PROCESSING

**11740  Priority of Cases—Impact Analysis**

Recognizing that limited resources prevent the processing of all cases on a first in, first out basis, the Agency has developed an Impact Analysis system. Impact Analysis assesses representation, unfair labor practice and compliance cases in terms of their relative impact on the public and their significance in effective achievement of the Agency's mission. Under Impact Analysis, cases are categorized as Category III, exceptional impact; Category II, significant impact; or Category I, important impact.

Since cases in a higher category should receive greater resources and have shorter time goals than cases in a lower category, categorization should be made as soon as possible, not later than 1 week from filing, and should be revised as warranted.

The General Counsel determines the type of cases which belong in each Impact Analysis category and establishes different time goals for the disposition of ULP cases within each category. These goals are most stringent for Category III cases and least stringent for Category I cases. The specific types of cases which belong in each category and the time goals are reviewed periodically and may be modified, depending upon a variety of factors, such as case intake, staffing, and budget. GC Memo 02-02.

The following guidelines are intended only to assist Regional Offices in exercising discretion as to the appropriate differentiation of cases; unusual situations undoubtedly will arise which will warrant placement in a category different from that which would ordinarily appear appropriate. As a guiding principle, Regional Offices should resolve any doubts about the appropriate category by selecting the higher category.

**11740.1 Category III Cases:  Exceptional Impact**

Category III (Exceptional) cases involve the allegations most central to achievement of the Agency's mission.

Illustrations include:

- 10(j) and (l) cases
- All representation cases involving the resolution of a question concerning representation, i.e., RC, RD, and RM petitions, as well as any postelection cases
- All blocking charge cases
- All cases in which the establishment or continuation of a union's status as a 9(a) representative is at stake. This would include: cases involving *Gissel* bargaining orders; the relocation, transfer or elimination of a bargaining unit; test of certification summary judgment; and alleged misconduct designed to frustrate a union's ability to obtain an initial contract after certification
- Cases involving the resolution of whether a strike or lockout is based on economic or unfair labor practice considerations
- Any case involving the issue of whether a strike is unprotected or the status of strikers or the employment status of significant numbers of employees
- 8(g) cases
- 8(a)(1), (3), (4), or (5) permanent or indefinite loss of employment cases

- 8(b)(2) cases where individuals have been denied work opportunities because of the union's alleged discrimination, including hiring hall refusal to refer allegations
- National cases or cases of unusually high visibility.

**11740.2 Category II Cases:  Significant Impact**

Category II (Significant) cases are all other cases, except for those included in Categories III and I.  They typically involve conduct which affects core rights under the Act and for which there is no alternative remedy.  In addition, this category includes those cases involving 8(d) duties where the conduct does not imperil the bargaining relationship itself.

Illustrations include:

- 8(a)(1), (3), and (4) discrimination cases which do not involve a permanent or indefinite loss of employment
- Refusal to hire cases
- Nonsection 10(j) picket line violence or misconduct cases
- All Representation cases which do not involve the resolution of a question concerning representation, i.e., UC, UD, AC, and WH cases
- 8(a)(5)/8(b)(3) refusal to provide information cases
- 8(a)(5) unilateral change allegations
- 8(b)(1)(A) duty of fair representation cases
- Independent 8(a)(1) allegations

**11740.3 Category I Cases:  Important Impact**

Category I (Important) cases make up the remainder of the Agency's work. They either are deferrable or involve conduct for which alternative means of redress are available to the charging party.

Illustrations include:

- *Collyer/Dubo* and other deferral cases
- 8(a)(5) pension and welfare contribution collection cases.  See GC Memo 02-05

Revised 6/07

**11740.4 Priority of Cases Within Each Category**

In determining which of several cases should be given priority within the particular Impact Analysis category, consideration should be given to the particular facts of each case, the nature of the alleged violation, its impact on the parties or the public, the type of relief indicated, and any other factors that would affect the policies of the Act. Generally, cases in which injunctive relief is being considered will take precedence over other matters, even in the same category.

## 11750–11754    SUBMISSIONS TO DIVISIONS OF ADVICE AND OPERATIONS- MANAGEMENT, THE SPECIAL LITIGATION BRANCH AND THE OFFICE OF THE EXECUTIVE SECRETARY

This section sets forth the general procedures regarding the submission of unfair labor practice case issues to the Divisions of Advice or Operations-Management, or the Special Litigation Branch for advice, clearance, or authorization. It also addresses the issues in representation cases which are to be submitted to the Board through the Office of the Executive Secretary. There are also other sections of the Manual regarding specific matters, including Section 10(j), 10(k), and compliance issues, in which advice, clearance or authorization should or must be sought.

### 11750 Unfair Labor Practice Cases

### 11750.1 Submissions to Division of Advice

Although the Regional Director generally has the responsibility to determine whether an issue warrants submission to the Division of Advice, the General Counsel's guidelines as set forth in GC Memo 02-03 establish that the following types of issues should be submitted:

- Developing areas of the law
- New technology, methods of business organization or union organizing activity
- Special prominence or matters of more than local interest
- Interregional impact
- Matters traditionally requiring Advice clearance.

In addition, certain other matters, as set forth in Secs. 11753.1(a) and 11753.2(a), should also be submitted to the Division of Advice. Credibility issues should not normally be submitted, but rather should be resolved by the Regional Director.

The Regional Office should notify the parties that the case is being submitted to the Division of Advice and the specific issue(s) involved. If the parties have not

submitted a position on the advice issues, they should be invited to do so promptly. However, the Regional Office must not communicate its recommendation to the parties.

With regard to cases interregional in scope, the Regional Office should consult with the Division of Operations-Management prior to submitting the case to the Division of Advice.

In all cases pending in the Division of Advice, any subsequent developments (such as withdrawals, settlements and private adjustments) should be promptly reported by the Regional Office.

If any skip counsel issues arose during an investigation, the Regional Office's submission to the Division of Advice should note the information listed in Sec. 10058.

### 11750.2  Format and Content of Request for Advice

All issues submitted should be clearly posed in a memorandum captioned: Request for Advice. Although the Request for Advice should be transmitted to the Divisions of Advice and Operations-Management electronically, the entire file should be forwarded to the Division of Advice promptly thereafter. The Request for Advice should be arranged in the following order:

- Charge
- Issues: The Regional Office should clearly note the specific issues on which advice is sought.
- Facts: The Regional Office should set forth a concise statement of relevant facts including credibility resolutions. If a Regional Agenda Minute is sufficiently detailed, it can be submitted as an attachment to the Advice memo rather than repeating the facts in the Request for Advice.
- Regional Office's Position:  The Regional Office should set forth its position on each issue, noting any dissents.
- Analysis:  The Regional Office should set forth its analysis of the strengths and weaknesses of the arguments on either side.
- Related Cases.

### 11750.3  Requests by Division of Advice for Further Investigation

All cases in which the Division of Advice requests further investigation should receive priority treatment consistent with their categorization under Impact Analysis. The information requested should be transmitted by the most expeditious means. Advice should be notified of any undue delay and the reasons therefor, with an estimate of the additional time required.

**11751  Suits Against the Agency and Requests for Intervention**

The Regional Office should promptly inform the Special Litigation Branch whenever the Agency or its agent has been sued or upon a request that the Agency intervene in private litigation. Pleadings and papers, as received, should be forwarded as expeditiously as appropriate to the Special Litigation Branch with a copy to the Division of Operations-Management.

**11752  Precomplaint Submissions to Division of Operations-Management**

- Clearance must be sought before naming an attorney in a complaint as a party respondent and/or agent of the respondent in the commission of unfair labor practices

- In cases in which the alleged unfair labor practices also arguably violate the Occupational Safety and Health Act, the Regional Office should refer to GC Memo 75-29 and GC Memo 79-4 for instructions regarding submission to the Division of Operations-Management

- In cases in which the alleged unfair labor practices also arguably violate the Federal Mine Safety and Health Act of 1977, the Regional Office should refer to GC Memo 80-10 for instructions regarding submission to the Division of Operations-Management

- In cases in which the alleged unfair labor practice charge also involves the Americans with Disabilities Act (ADA), the Regional Office should consult with the Division of Operations-Management

- Misconduct by attorneys or other representatives should, where appropriate, be referred to the Division of Operations-Management. Sec. 102.177(e), Rules and Regulations and OM Memos 97-2 and 01-80

- Certain settlements amounting to less than 80 percent or more than 100 percent of net backpay require clearance from the Division of Operations-Management as follows:

  o All formal and informal Board settlements, Sec. 10592.4 and .8 of the Compliance Manual

  o Non-Board settlements in cases where the Regional Office has decided to issue complaint, Sec. 10592.4 and .8 of the Compliance Manual.

## 11753  Postcomplaint, Posthearing, and Compliance Submissions

### 11753.1 Postcomplaint Submissions

(a) *Division of Advice*

Authorization from the Division of Advice should be obtained before:

- Issuing postcomplaint investigative subpoenas in certain situations. See Sec. 11770.4 for more detailed guidance.
- Issuing trial subpoenas if there are foreseeable impediments to enforceability, such as where the witness may assert a recognized privilege
- Seeking subpoena enforcement where previously unforeseen impediments arise. Sec. 11790
- Denying a private party's request for subpoena enforcement. Sec. 11790.1

(b) *Division of Operations-Management*

Authorization from the Division of Operations-Management should be obtained before introducing or agreeing to the introduction of confidential Agency documents. Sec. 10398.

Misconduct by attorneys or other representatives should, where appropriate, be referred to the Associate General Counsel, Division of Operations-Management. Sec. 102.177(e), Rules and Regulations and OM 97-2 and OM 01-80.

### 11753.2 Posthearing Submissions

(a) *Division of Advice*

Authorization from the Division of Advice should be sought in the following matters:

- Before deciding whether or not to file exceptions where the Administrative Law Judge's decision raises previously unforeseen novel or complex policy issues. Sec. 10430.1
- Where complaint was authorized by the Division of Advice, the Regional Office should make a timely recommendation to Advice regarding exceptions
- Before requesting oral argument before the Board. Sec. 10438.6
- Where oral argument is ordered by the Board, to determine who will argue and the nature of the argument. Sec. 10442.

Revised 6/07

- Before filing a motion for reconsideration of a Board order.  Sec. 10452

- Before filing an opposition to another party's motion for reconsideration where new or novel issues are involved.  Sec. 10452

(b)  *Office of Appeals*

Where complaint was authorized by the Office of Appeals, the Regional Office should make a timely recommendation to Appeals regarding exceptions.

## 11753.3  Compliance

For any issues regarding whether clearance is necessary from the Division of Operations-Management with respect to compliance with a settlement agreement, administrative law judge's decision, Board order or court judgment, the appropriate section in the Compliance Manual should be consulted.

## 11753.4  Equal Access to Justice Act (EAJA)

When a Region is uncertain regarding Agency policy with respect to an EAJA issue, the matter should be submitted to the Division of Advice.

## 11754  Representation Cases

## 11754.1  Generally

All requests for advice in representation cases except as set forth in Sec. 11754.2 should be directed to the Board through the Office of the Executive Secretary.  Normally, requests for advice with respect to substantive law will not be submitted to the Board as the Regional Director is expected to apply Board precedent and to decide questions of statutory interpretation.  Sec. 11273.  In unusual cases presenting novel issues, the Regional Director may exercise discretion and transfer such matters to the Board for decision.

Advice, clearance, or authorization should be sought from or notification given to the Board, the Executive Secretary or the Director of Representation Appeals in the following circumstances:

(a)  Where no-raiding procedures are involved.  Secs. 11018.1 and .2 and 11019

(b)  Prior to any relaxation of the rule requiring a 30-percent showing of interest of petitioner.  Sec. 11023.1

(c)  If an officer or responsible agent of the petitioner was responsible for or had knowledge of and condoned submission of a forged showing and the remaining valid showing satisfies the interest requirement.  Sec. 11029.3(b)

(d)  Before treating exceptions or a request for review as a motion for reconsideration.  Secs. 11100.3, 11274, 11364.8, and 11394.8

Revised 6/07

(e)  Where a petitioner wishes to withdraw a petition after a valid election.  Sec. 11116.1

(f)  Where the validity of the showing of interest has been raised in a request for review.  Sec. 11274

(g)  Where the date of an election has been set and a request for review is filed with the Board.  Secs. 11274 and 11302.1

(h)  Where the date of an election has been set and a motion for reconsideration has been or is to be filed with the Board.  Sec. 11282

(i) Before updating the eligibility list used in a runoff. Sec. 11350.5

## 11754.2  Authorization From Headquarters

Submission for clearance is not required before referring to other Federal or State agencies possible violations of other statutes, except there is a requirement of clearance when the potential violation concerns possible criminal conduct related to Agency proceedings.  Examples are forgery of authorization cards, perjury, or obstruction of justice in connection with NLRB proceedings.  Similarly, there is a clearance requirement prior to referral if alleged unethical conduct of attorneys is involved.

(a)  *Authorization from Advice and Special Litigation is required before:*

- Issuing investigative subpoenas in the limited circumstances set forth in Sec. 11770.4.  But see Sec. 11770.2.

- Issuing hearing subpoenas if there are new or doubtful legal problems of enforceability.  Secs. 11770.4 and 11772

- Denying request of private party for enforcement of subpoenas.  Sec. 11790

- Seeking enforcement of subpoena, where, between the necessity to issue and necessity of enforcement, intervening circumstances created enforcement problems.  Sec. 11770.6

(b)  *Authorization from Advice is required before:*

- Filing a motion for reconsideration of a Board decision or an answer to such a motion filed by any other party that raises new or novel legal problems.  Sec. 10452

(c)  *Authorization from Operation-Managements is required before:*

- Preparing and conducting last-offer elections.  Sec. 11520

- Notifying voters of an election by newspapers, radio, or television.  Sec. 11314.7(b)
- Obtaining non-Board personnel to participate in the conduct of an election
- Requesting an Administrative Law Judge to handle a complex hearing on objections/challenges.  Sec. 11424.1
- Consolidation of interregional cases.  Sec. 11716
- Severance of interregional cases.  Sec. 11718
- Payment of special fees for expert testimony

## 11770–11784  SUBPOENAS

Section 11(1) of the Act provides that the Board or any Member may issue subpoenas calling for attendance and testimony of witnesses or the production of evidence in any investigation or proceeding.  Sec. 102.31(a) (for C cases) and Sec. 102.66(c) (for R cases), Rules and Regulations set forth the procedure for issuance of such subpoenas and provide that the Executive Secretary of the Board has the authority to sign and issue subpoenas on behalf of the Board.

### 11770  Investigative Subpoenas

During certain investigations, in both R and C cases, resort to subpoenas will be necessary in order to ascertain the facts on which to base an administrative decision on the merits.

Investigative subpoenas, however, are no substitute for a promptly initiated, dogged, and thorough pursuit of relevant evidence from cooperative sources.  Investigative subpoenas should be utilized responsibly to make available to the Regional Director evidence necessary for:

- Deciding whether a complaint or compliance specification should issue, absent settlement
- Determining whether there has been compliance with remedial obligations or
- Making appropriate determinations in processing R cases

### 11770.1  Application for Investigative Subpoena

Upon Regional determination that it is necessary to issue an investigative subpoena, the Board agent assigned to the case should request such subpoena from the Regional Director.  The application must be in writing and should contain a statement of

the scope of the information or documents sought and of their relevance. There is no right to an investigative subpoena available to parties other than the General Counsel.

## 11770.2 Scope of Regional Director's Discretion

The Regional Director has full discretion to issue precomplaint investigative subpoenas ad testificandum and duces tecum seeking evidence from parties and third party witnesses whenever the evidence sought would materially aid in the determinations described above in Sec. 11770 and whenever such evidence cannot be obtained by reasonable voluntary means.[1]  The Regional Director's discretion is subject only to limited clearance and recordkeeping requirements.

Subpoenas ad testificandum may compel testimony by affidavit, by oral testimony under oath before a court reporter or by response to written interrogatories.[2]  Where the Regional Office reasonably anticipates that a subpoenaed witness may be uncooperative, an interview of such witness should normally be conducted under oath before a court reporter.

## 11770.3 Notification of Counsel or Representative

Board agents are reminded of ethical restrictions against bypassing counsel that may mandate the notification of counsel to a party or witness who is subject to a subpoena. Sec. 10058.  However, there is no general requirement that counsel for a party be notified of a subpoena to a neutral witness.[3]

## 11770.4 Clearance by Headquarters

A Regional Director should obtain Headquarters' clearance prior to issuance of a subpoena where there is likely to be raised a serious constitutional defense, claim of privilege or other legal problem, or when the Regional Office wants to issue a subpoena subsequent to complaint and before issuance of a Board order.  However, Section 11

---

[1] *NLRB v. North Bay Plumbing, Inc.,* 102 F.3d 1005, 1008 (9th Cir. 1996). Accord: *Carolina Food Processors v. NLRB,* 81 F.3d 507, 511–512 (4th Cir. 1996). The courts have, in fact, interpreted Sec. 11 to permit the Board "to obtain everything it [could seek] from an order compelling discovery" under the Federal Rules of Civil Procedure. *NLRB v. Interstate Material Corp.,* 930 F.2d 4, 6 (7th Cir. 1991).

[2] See Compliance Manual, Sec. 10590.2. The Board's investigative authority under Sec. 11 includes the power to require responses to written questions (see *EEOC v. Bay Shipbuilding Corp.,* 668 F.2d 304, 306, 313 (7th Cir. 1981); *EEOC v. Maryland Cup Corp.,* 785 F.2d 471, 478–479 (4th Cir.), cert. denied 479 U.S. 815 (1986)); to compel the production of documents (see, e.g., *NLRB v. G.H.R. Energy Corp.,* 707 F.2d 110, 113–114 (5th Cir. 1982); *EEOC v. Maryland Cup,* supra at 476–478); and to require oral testimony before the investigator concerning the matters in question (e.g., *NLRB v. North Bay Plumbing,* supra at 1008; *Link v. NLRB,* 330 F.2d 437, 438 (4th Cir. 1964); cf. *FTC v. Standard American, Inc.,* 306 F.2d 231, 233–236 (3d Cir. 1962); *FTC v. Scientific Living, Inc.,* 150 F.Supp. 495, 497–499 (M.D. Pa. 1957), affd. 254 F.2d 598 (3d Cir. 1958), cert. denied 358 U.S. 867 (1959), rehearing denied 358 U.S. 938 (1959)). Such investigative subpoenas can be directed not only to the charged party, but to another party that might be derivatively liable for unfair labor practices (*NLRB v. CCC Associates,* 306 F.2d 534, 537–540 (2d Cir. 1962); *NLRB v. Thayer, Inc.,* 201 F.Supp. 602, 603–604 (D. Mass. 1962)); or indeed to any person having information relevant to the investigation (*Link v. NLRB,* 330 F.2d at 440)).

[3] See generally *S.E.C. v. O'Brien,* 467 U.S. 735 (1984).

Revised 6/07

subpoenas may be utilized, without clearance, where there is a postcomplaint need to investigate new allegations, where there is a need to investigate the possible dissipation of assets, where there is a need to preserve testimonial evidence as contemplated under Sec. 102.30, Rules and Regulations, or where there is a need to investigate noncompliance with Board orders or court decrees enforcing such orders. See, e.g., *Alaska Pulp Corp.,* 149 LRRM 2684, 2688 fn. 6 (D.D.C. 1995) (court enforced subpoena investigating possible noncompliance with court enforced Board order).

Thus, clearance should be secured prior to issuing a subpoena:

- Where a witness or entity may claim a constitutional protection or invoke a privilege, e.g., where the subpoena is addressed to a medical doctor or attorney or seeks evidence of communications between an attorney and any employee of the client
- Upon a member of the press to elicit testimony relating to information gained in his or her capacity as a member of the press or requiring the production of materials secured as a result of news gathering activities

Clearance may also be required in circumstances where an attorney of a party to the case also represents a third-party witness as an individual. See also Sec. 10058.4(c). Generally, in these cases, requests for clearance should be submitted to the Division of Advice and the Special Litigation Branch, which is primarily responsible for subpoena enforcement litigation. If the issue(s) under investigation involve a compliance matter or possible violation of a Board order or court decree enforcing such an order, clearance requests should also be submitted to the Contempt Litigation and Compliance Branch.

**11770.5 Financial Institution Records**

The provisions of the Right to Financial Privacy Act (RFPA), 12 U.S.C. § 3401 et seq., must be observed if an investigative subpoena is to be served on a financial institution for financial records of individuals and small partnerships. Compliance Manual, Secs. 10590.2, 10593.6 and 10601.3.

The RFPA does not apply to the financial records of a corporation. Nor does it restrict in any way the issuance of administrative subpoenas to obtain financial or banking records of individuals or partnerships directly from such parties or from any entity other than a "financial institution." The RFPA does not apply, for example, to a subpoena for financial or tax records issued to an individual's accountant or CPA.[4]

---

[4] The RFPA also contains a "delayed notification" provision, 12 U.S.C. § 3409, pursuant to which the Government can request a district court to permit withholding of the required notice to an individual whose records are being sought for 90 days under exigent circumstances. The Region should consult with the Contempt Litigation and Compliance Branch regarding the availability and use of this provision. See Compliance Manual, Sec. 10601.3 for further information concerning the RFPA.

**11770.6 Problems Regarding Enforceability; Reports to Headquarters**

When problems of enforceability arise following issuance of investigative subpoenas, the Regional Director should report developments to the Division of Advice and the Assistant General Counsel for Special Litigation. If the issue(s) under investigation involve a compliance matter or possible violation of a Board order or court decree enforcing such an order, the Regional Director should also report developments to the Contempt Litigation and Compliance Branch.

In order to permit the continued oversight of Agency use of investigative subpoenas, Regional Offices should maintain reporting files, which may be in electronic format, that list, for each investigative subpoena issued, the name of the case, the name of the party or witness to whom the subpoena is directed, the evidence sought, the date of issuance, a brief description of the basis for issuance, and a notation of any petition to revoke and/or enforcement proceedings.

**11772  Trial or Hearing Subpoenas**

The need to subpoena testimony or the production of records at C or R Case hearings should initially be determined by the Board agent assigned, in consultation with supervision. Thus, Board agents may be required to notify supervision of the name of, and the need for, any subpoenaed person or document, along with a description of such document.

In determining whether to issue a subpoena, the Regional Director should consider both the necessity for the subpoena and the enforceability of the subpoena. The subpoena should not be requested if it appears that it cannot be enforced in the event of noncompliance. If there are foreseeable impediments to enforceability, the matter should be submitted to the Division of Advice and the Special Litigation Branch prior to issuance of the subpoena. If the issues(s) under investigation involve a compliance matter or possible violation of a Board order or court decree enforcing such an order, the Regional Director should also notify the Contempt Litigation and Compliance Branch.

Application for a subpoena made prior to the hearing (whether by a Board agent or by other parties) should be made to the Regional Director; one made at the hearing should be made to the Administrative Law Judge or hearing officer, as the case may be, and may be made ex parte. See Sec. 102.31(a), Rules and Regulations, for C Cases and Sec. 102.66(c) for R Cases. These rules require only a written application for subpoenas; neither the name of the witness nor the description of the documents need be included.

Upon receipt of a request for a subpoena from a private party, the Regional Director should grant the application for the requested subpoena. However, the Regional Director retains discretion in granting an application from a Board agent.

**11774  Persons Subpoenaed**

Generally, witnesses that the trial attorney expects to use at the hearing should be subpoenaed. However, absent unusual circumstances, an exception should be made

Revised 6/07

where the witness has a definite personal interest or stake in the outcome; e.g., a charging party, or its agents, or alleged discriminatees.

Pursuant to Sec. 102.118 Rules and Regulations, Board agents are prohibited from testifying at formal proceedings without authorization from the appropriate agency official.

## 11776  Subpoenas Duces Tecum

A subpoena duces tecum should seek relevant evidence and should be drafted as narrowly and specifically as is practicable. The use of the word "all" in the description of records should be avoided wherever possible. For example, the phrase "the corporate records showing total purchases" might be substituted for the phrase "all books, records, documents, and other writings that will show total purchases." Under some circumstances, the subpoena may provide for alternatives in lieu of physical production. In such instances the subpoenaed party may furnish a sworn affidavit setting forth the desired evidence or an admissible summary of that evidence, provided that pertinent records are made available to the Board agent to ensure accuracy.

The subpoena duces tecum should be addressed to the entity with control of the records sought, whether the entity is a corporation, partnership, or labor organization. Subpoenas directed to a sole proprietorship or individual should be addressed to that individual.

Where the same person has control and knowledge of the records, the subpoena duces tecum may be addressed to the entity, attention to that person. Where the agent who can explain the records is unknown, a subpoena duces tecum should be addressed to the entity itself and a subpoena ad testificandum should be served on a person who is known or believed to be familiar with the records.

## 11778  Service of Subpoenas

Sec. 102.113(c), Rules and Regulations requires that subpoenas be served personally, by registered or certified mail, by telegraph, or by delivery at the principal office or business address of the person being served. Also see Sec. 11(4) of the Act. Absent unusual circumstances, such service should be by certified mail or hand delivery with a copy served by regular mail, hand delivery, or by facsimile on any attorney or other representative of the party or witness. If a party or witness is represented by more than one attorney or representative, service on any one of such persons, in addition to the party or witness, satisfies this requirement. However, as a matter of courtesy, an effort should be made to serve all attorneys or representatives of a party or a witness. See Secs. 11842.2–.3 and Sec. 102.113(f), Rules and Regulations.

A claim form for payment of fees and mileage may in appropriate circumstances be enclosed with the subpoena if it is mailed or given to the witness if it is hand delivered.

Revised 6/07

11780                                WITNESS FEES

There is no obligation on the part of the General Counsel (as opposed to outside parties) to tender witness fees at the time of service. In cases of need or emergency, travel accommodations, where authorized by the Regional Director, may be provided in advance. Where necessary, tickets may be obtained in advance through the Agency travel account.

Although no particular period of notice is prescribed, the service and return date for the following types of subpoenas should, where circumstances allow, normally be as follows:

- Investigative Subpoenas – served with a prompt and reasonable return date under all the circumstances.

- Trial Subpoenas – served at least 2 weeks prior to the return date at hearing, but, at any rate in sufficient time to allow 5 days after receipt of the subpoena to petition to revoke the subpoena. See Sec. 11782.4.

- Representation Case Subpoenas – served with a prompt and reasonable hearing return date under all the circumstances.

## 11780  Witness Fees

Witnesses subpoenaed by a Board agent should be advised that they are entitled to appearance fees and travel expenses, if they make the appropriate claim. Where appropriate, witnesses are also reimbursed for travel, lodging and meal expenses. Since the amounts and terms of these reimbursements may vary from time to time, refer to the latest Administrative Policy Circular or GC Memoranda for current terms and rates.

Witnesses subpoenaed by the Board agent expected to make a claim should complete and sign a claim form promptly after appearance at the proceeding, upon release from the subpoena. Approval of a witness fee claim is the responsibility of the Board agent.

Although private parties may elect to compensate witnesses for lost income while appearing and testifying, there is no like compensation paid by the Government.

If it comes to the Board agent's attention that a private party refuses to pay appropriate fees to an employee witness, the witness and the party should be advised that such failure could violate the Act. *Howard Mfg. Co.,* 231 NLRB 731 (1977).

## 11782  Petition to Revoke

Secs. 102.31(b) (C cases) and 102.66(c) (R cases), Rules and Regulations set forth procedures regarding petitions to revoke subpoenas. Such rules provide that a subpoenaed person who does not intend to comply with the subpoena, whether ad testificandum or duces tecum, may file a petition to revoke within 5 days after the date

the subpoena is received. Although not required by the Rules and Regulations, a copy of the subpoena should be attached to the petition to revoke.

Petitions to revoke may be based on the ground that the subpoena does not relate to any matter under investigation or at issue in a hearing, does not describe the evidence sought with sufficient particularity or if for any other reason sufficient in law the subpoena is otherwise invalid.

### 11782.1 Filed Prior to Hearing

A petition to revoke filed prior to a hearing is filed with the Regional Director. If the subpoena under attack is an investigative subpoena in a C case, the Regional Director should refer it to the Board for ruling; if it is a hearing subpoena in a C case, the petition should be referred to the Administrative Law Judge with a copy of the subpoena attached. If it is either an investigative or hearing subpoena in an R case, the Regional Director may rule on it or refer it to the hearing officer.

### 11782.2 Filed at Hearing

A petition to revoke filed at a hearing should be filed with either the Administrative Law Judge or hearing officer, who should then rule on it.

### 11782.3 Notice of Filing

Notice of the filing of the petition to revoke (which need not have been served on all parties) should be given timely by the Regional Director, Administrative Law Judge, or hearing officer, as the case may be, to the party at whose request the subpoena was issued.

### 11782.4 Five-Day Period

Section 11(1) of the Act and Secs. 102.31(b) and 102.66(c), Rules and Regulations provide that petitions to revoke shall be filed within 5 days from the service (i.e., receipt) of a subpoena. There is case authority which holds that the 5-day period is a maximum and not a minimum. Absent a showing of prejudice, the subpoenaed party may be required to file and argue its petition to revoke and, if ordered by the Administrative Law Judge or hearing officer, produce subpoenaed testimony and documents at hearing in less than 5 days from receipt of the subpoena. See *Packaging Techniques, Inc.,* 317 NLRB 1252, 1253–1254 (1995) and *NLRB v. Strickland,* 220 F.Supp. 661, 665–666 (D.C.W. Tenn., 1962), affd. 321 F.2d 811, 813 (6th Cir. 1963).

### 11782.5 Not a Part of the Record

Actions and documents in connection with petitions to revoke, including rulings, are not part of the record, unless the aggrieved person specifically requests it.

### 11784 Witness Claims of Privilege Against Self-Incrimination

Sec. 102.31(c), Rules and Regulations addresses claims of privilege against self-incrimination. The rule provides that whenever a witness at any proceeding before the

Board claims such a privilege, any party may request the Board to issue an order compelling testimony. It is necessary for the Board to obtain the U.S. Attorney General's approval before issuing an order compelling the witness claiming such privilege to testify or provide other information.

Before seeking a Board order to compel testimony from a witness claiming a privilege against self-incrimination, the Regional Office should submit a request for clearance, along with supporting reasons, to the Division of Advice. If the issue(s) under investigation involve a compliance matter, possible violation of a Board order or court decree enforcing such an order, a copy of the request for clearance should also be sent to the Contempt Litigation and Compliance Branch.

A witness who claims the privilege against self-incrimination will not be required, or permitted, to testify or give other information covered by the claim of privilege until the Board has issued the requested order.

## 11790–11808  ENFORCEMENT OF SUBPOENA

### 11790  Enforcement of Subpoena

Since the issuance of a subpoena includes prima facie authority to enforce, clearance to enforce is not normally necessary. However, when previously unforeseen impediments create enforcement problems, the matter should be referred to the Division of Advice and Special Litigation Branch for clearance and consultation. If the issue(s) under investigation involves a compliance matter or possible violation of a Board Order or court decree enforcing such an order, the matter should also be referred to the Contempt Litigation and Compliance Branch.

### 11790.1  Issued at Request of Private Parties

Section 11(2) of the Act provides that subpoena enforcement proceedings must be instituted "upon application by the Board." Sec. 102.31(d), Rules and Regulations provides that proceedings for enforcement of subpoenas issued at the request of a private party shall be instituted by the General Counsel in the name of the Board "on relation of such private party," unless, in the Board's judgment, the enforcement of such subpoena would be inconsistent with the law or the policies of the Act.

If a Regional Office is in doubt regarding whether the enforcement of a subpoena satisfies the above-noted criteria, it should submit the matter to the Division of Advice and Special Litigation Branch for clearance. If the subpoena involves a compliance matter or possible violation of a Board Order or court decree enforcing such an order, the matter should also be referred to the Contempt Litigation and Compliance Branch.

Prior to filing the application, the Regional Office must advise the requesting party that it bears the responsibility for prosecuting the subpoena enforcement proceeding and that the Regional Office will not assume responsibility beyond the filing of the application. Sec. 102.31(d), Rules and Regulations. Exceptions to this policy arise when

the respondent questions the Board's jurisdiction, its power to issue the subpoena or the validity of the issuance. Under these limited circumstances, the General Counsel may seek to retain control of the case, since the issues raised relate to the Board's basic authority and an adverse decision may affect other cases.

After institution of a subpoena enforcement proceeding, the Regional Office should inform Advice and Special Litigation if unusual circumstances arise. If the issue(s) under investigation involves a compliance matter or possible violation of a Board Order or court decree enforcing such an order, the matter should also be referred to the Contempt Litigation and Compliance Branch.

If there is noncompliance with an enforced subpoena, upon the request of the party on whose behalf the subpoena was issued and enforcement proceedings were instituted, the Regional Office must initiate contempt proceedings in the appropriate U.S. district court, unless contempt proceedings would be inconsistent with law or the policies of the Act.

Absent a request by the party on whose behalf the subpoena was issued, contempt proceedings need not be instituted by the Regional Office. *Best Western City View Motor Inn,* 325 NLRB 1186 (1998).

## 11790.2 Issued at Request of the General Counsel

Enforcement proceedings with respect to subpoenas requested by the General Counsel are handled by the Regional Office involved.

## 11790.3 Notification to Headquarters

In cases where clearance has been obtained from Headquarters, the Regional Office should forward, if requested, copies of the pleadings, briefs and any orders that issue to the Division of Advice and Special Litigation Branch and, if the investigation involves a compliance matter or possible violation of a Board Order or court decree enforcing such an order, also to the Contempt Litigation and Compliance Branch.

## 11790.4 Appeal Proceedings

Appeal proceedings will be handled by the Special Litigation Branch. If the Regional Office's enforcement application is denied in full or in part, the Regional Office should promptly notify and make a recommendation to the Special Litigation Branch as to whether an appeal should be taken to the circuit court. Upon receipt of a notice of appeal made by another party, the Regional Office should promptly advise and provide all relevant papers to the Special Litigation Branch. If the appeal involves a compliance matter or possible violation of a Board Order or court decree enforcing such an order, notice should be also given to the Contempt Litigation and Compliance Branch.

## 11790.5 Stays Pending Appeal

After an Agency subpoena has been enforced, any request for a stay pending appeal should be referred to the Special Litigation Branch. If the appeal involves a compliance matter or possible violation of a Board Order or court decree enforcing such

an order, a copy of the stay request should also be forwarded to the Contempt Litigation and Compliance Branch.

## 11792  Subpoena Authority of the Board/Court Jurisdiction

### 11792.1  Authority of Board to Issue Subpoenas

Section 11(1) of the Act grants statutory authority to the Board for the exercise of subpoena power, which is similar to that of other administrative agencies. The intent of Congress to confer such authority is clear. S.Res. 573, 74th Cong., 1st Session; Sec. 6(c) of the Administrative Procedure Act, 5 U.S.C. § 556(c)) and the courts have long upheld the power of administrative agencies to issue subpoenas. *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186 (1946); *NLRB v. North Bay Plumbing,* 102 F.3d 1005, 1007 (9th Cir. 1996).

Section 11 of the Act, 29 U.S.C. § 161, grants to the Board and its agents broad investigatory authority, including the power to subpoena any evidence "that relates to any matter under investigation or in question." 29 U.S.C. § 161(1); *NLRB v. Interstate Material Corp.,* 930 F.2d 4, 6 (7th Cir. 1991) (describing the Board's broad Section 11 powers); *NLRB v. Steinerfilm, Inc.,* 702 F.2d 14, 15 (1st Cir. 1983) (same); *NLRB v. G.H.R. Energy Corp.,* 707 F.2d 110, 113 (5th Cir. 1982) (same). This broad subpoena power enables the Board "to get information from those who best can give it and who are most interested in not doing so." *U.S. v. Morton Salt Co.,* 338 U.S. 632, 642 (1950). Thus, such subpoenas may be directed to any person having information relevant to an investigation. See, e.g., *Link v. NLRB,* 330 F.2d 437, 440 (4th Cir. 1964). See also Sec. 11770.2 above.

### 11792.2  Jurisdiction of Courts to Enforce Subpoenas

The district courts receive their power to order enforcement of subpoenas issued by the Board by virtue of Section 11(2) of the Act. The granting of such power has been approved and exercised repeatedly by the courts. Consistent with the bounds of reasonableness, subpoena enforcement may be sought in any district where the investigation is undertaken or where the subpoenaed person is found, resides or transacts business. *NLRB v. Ronny Line,* 50 F.3d 311, 313–314 (5th Cir. 1995); *NLRB v. Alaska Pulp Corp.,* 149 LRRM 2682, 2684 (D.D.C. 1995); *NLRB v. Brooklyn Manor Corp.,* 1999 WL 1011935 (E.D.N.Y.).

### 11792.3  Collateral Proceedings

Since the Board has the power to make the initial determination of its jurisdiction in any case pending before it (*Oklahoma Press,* 327 U.S. at 209–214), a court in a subpoena enforcement proceeding lacks the authority to decide that issue. In *NLRB v. Barrett Co.,* 120 F.2d 583 (7th Cir. 1941), the court enforced the Board's subpoena seeking commerce data. See also *Oklahoma Press,* 327 U.S. at 214; *Endicott Johnson Corp. v. Perkins,* 317 U.S. 501 (1943); *NLRB v. Northern Trust Co.,* 56 F.Supp. 335, 337–338 (D.C. Ill. 1944), affd. 148 F.2d 24, 27 (7th Cir. 1945). Cf. *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50 (1938), where *Bethlehem* challenged the Board's

jurisdiction in an injunction proceeding. If the subpoenaed party argues that the Board's jurisdiction is plainly lacking as a matter of law, the Special Litigation Branch should be consulted consistent with Sec. 11770.4.

## 11794  Relevance

The testimony or documentary evidence sought by enforcement of a subpoena must be relevant to the matter under investigation or in question before the Board. The application should assert that the evidence is relevant to the petition, charge, complaint, or notice of hearing, which is attached to the application as an exhibit. *Oklahoma Press Publishing Co.*, 327 U.S. at 214–215. See also *NLRB v. Carolina Food Processors*, 81 F.3d 507 (4th Cir. 1996).

"For purposes of an administrative subpoena, the notion of relevancy is a broad one . . . . So long as the material requested 'touches a matter under investigation,' an administrative subpoena will survive a challenge that the material is not relevant." *Sandsend Financial Consultants, Ltd. v. Federal Home Loan Bank Board*, 878 F.2d 875, 882 (5th Cir. 1989) (citation omitted) and cases cited therein; *NLRB v. Alaska Pulp Corp.*, 149 LRRM 2684, 2689 (D.D.C 1995); accord: *NLRB v. Carolina Food Processors*, 81 F.3d at 511. An investigative subpoena may properly seek evidence regarding all issues under investigation, including potential defenses. *NLRB v. North Bay Plumbing*, 102 F.3d at 1008. A party seeking to have a subpoena quashed must establish that "the subpoena is intended solely to serve purposes outside the purview of the jurisdiction of the issuing agency." *NLRB v. Interstate Dress Carriers, Inc.*, 610 F.2d 99, 112 (3d Cir. 1979).

## 11796  "Fishing Expedition" as a Defense

The Board agent should carefully draft subpoenas in order to avoid potential arguments that the subpoena constitutes a "fishing expedition." The subpoena should describe all documents sought with respect to content and time period. The *Oklahoma Press* decision is especially instructive regarding whether a subpoena constitutes a "fishing expedition."

However, the Board is entitled to obtain all relevant information requested, as long as compliance with the subpoena does not impose an "undue burden" on the recipient. With respect to assertions of "undue burden," the courts have made clear that "[s]ome burden on subpoenaed parties is to be expected and is necessary in the furtherance of the agency's legitimate inquiry and the public interest . . . . The question is whether the demand is *unduly* burdensome or *unreasonably* broad." *FTC v. Texaco*, 555 F.2d 862, 882 (D.C. Cir. 1977), cert. denied sub nom. *Standard Oil of California v. FTC*, 431 U.S. 974 (1977) (emphasis in original). The burden of demonstrating unreasonableness or undue burden clearly rests with the party asked to produce the information and "[t]hat burden is not easily met where . . . the agency inquiry is pursuant to a lawful purpose and the requested documents are relevant to that purpose." Id. at 882 and cases cited there. In order to show that a subpoena is unduly burdensome, the

subpoenaed party must show that the subpoena seriously disrupts regular business operations. See *EEOC v. Maryland Cup Corp.,* 785 F.2d 471, 477 (4th Cir.), cert. denied 479 U.S. 815 (1986); *NLRB v. Carolina Food Processors,* 81 F.3d at 513.

## 11798 Subpoena Enforcement Procedures

### 11798.1 Order to Show Cause Procedure

Under Section 11(2) of the NLRA, subpoena enforcement proceedings are commenced by the filing of an application by the Board. The courts repeatedly have held that subpoena enforcement proceedings need not be commenced by service of a summons and complaint normally required to commence a civil suit pursuant to Rule 4 of the Federal Rules of Civil Procedure. *Goodyear Tire & Rubber Co. v. NLRB,* 122 F.2d 450, 451 (6th Cir. 1941); *Cudahy Packing Co. v. NLRB,* 117 F.2d 692, 694 (10th Cir. 1941); *NLRB v. D. L. Baker,* enfd. mem. 166 F.3d 333 (4th Cir. 1998) (unpublished disposition).

The local rules for the U.S. district court in which the application for enforcement will be filed should be reviewed so that the application conforms to the procedural requirements of that court.

The Manual contains patterns to be used in subpoena enforcement proceedings. Sec. 11800.1. The order to show cause set forth in Sec. 11806.1 as Pattern 53, when signed by the court, will provide explicit authorization for service to be accomplished pursuant to Rule 5 of the Federal Rules or by certified mail. Absent such a signed order to show cause, personal service of the application and supporting papers should be obtained in order to avoid unnecessary disputes concerning the validity of service.

### 11798.2 Motion Procedure

Alternatively, an application for enforcement can be treated by the Regional Office as a motion, without obtaining an order to show cause. In such circumstances, the Regional Office should obtain personal service of the application and supporting papers in order to avoid unnecessary disputes concerning the validity of service.

While this approach may be used in any such subpoena enforcement action, it can be particularly useful in situations where (a) the local district court rules permit a moving party to set the hearing date at the time a motion is filed and (b) the Regional Office is seeking summary enforcement of a subpoena, based upon the failure of the subpoenaed party to file with the Board a timely petition to revoke the subpoena. But see Sec. 11800.2(c) below, noting cases where subpoenaed parties have been permitted to raise for the first time in court constitutional and privilege defenses.

Advice and assistance on the use of this motion procedure may be obtained from the Special Litigation and Contempt Litigation and Compliance Branches. The Contempt Litigation and Compliance Branch has had experience in treating the application as a motion and can supply sample pleadings.